UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY NICHOLSON                              Case No. 14-14391

        Plaintiff,                         Avern Cohn
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Stephanie Dawkins Davis
                                               United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 14)**

## I.  PROCEDURAL HISTORY

    A.  Proceedings in this Court

On November 14, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). This case was referred to Magistrate Michael Hluchaniuk for all pretrial purposes by District Judge Avern Cohn.  (Dkt. 2).  The case was subsequently reassigned to the undersigned pursuant to Administrative Order.  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 14).

    B.  Administrative Proceedings

Plaintiff filed the instant claims for a period of disability and disability insurance benefits on March 22, 2012, alleging disability beginning July 13,

1

2010.[1]  (Dkt. 6-2, Pg ID 32).  Plaintiff's claim was initially disapproved by the

Commissioner on May 10, 2012.  *Id*.  Plaintiff requested a hearing, and on March

5, 2013 plaintiff appeared, along with his attorney, before Administrative Law

Judge ("ALJ") Ethel Revels, who considered the case *de novo*.  (Dkt. 6-2, Pg ID

44-106).  In a decision dated August 12, 2013, the ALJ found that plaintiff was not

disabled.  (Dkt. 6-2, Pg ID 32-40).  Plaintiff requested a review of this decision on

August 22, 2013.  (Dkt. 6-2, Pg ID 28).  The ALJ's decision became the final

decision of the Commissioner when the Appeals Council on October 21, 2014,

denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 22-24); *Wilson v. Comm'r

of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, and this matter be **REMANDED** for further

proceedings under Sentence Four.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was born in 1967 and was 45 years old at the time his disability

insured status expired, and 43 years old the alleged onset date of disability.  (Dkt.

---

[1] At the hearing, plaintiff amended his alleged disability onset date to September 20, 2010, based on notes from his treating physician, E. Neil Pasia, D.O.  (Dkt. 6-2, Pg ID 32).

6-2, Pg ID 34).  The ALJ applied the five-step disability analysis to plaintiff's

claim and found at step one that plaintiff had not engaged in substantial gainful

activity from the alleged onset date through his date last insured.  (Dkt. 6-2, Pg ID

34).  At step two, the ALJ found that plaintiff's cervical disc disorder, depression,

occipital headaches and substance abuse were severe impairments.  (*Id*.).  At step

three, the ALJ found no evidence that plaintiff's combination of impairments met

or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID 35).  The ALJ

determined that plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR
> 404.1567(a) except he was limited to simple repetitive
> tasks because of occasional limitations in the ability to
> maintain sustained concentration; no more than
> occasional pushing/pulling with the upper extremities;
> no overhead reaching; occasional gross manipulation
> bilaterally; no work at hazardous heights or around
> dangerous machinery; no work with vibrating tools or
> vibrating areas; no more than occasional climbing of
> stairs, balancing, stooping, crouching, kneeling,
> crawling; no climbing of ladders, ropes or scaffolds; no
> more than occasional full rotation, flexion, and extension
> of the head/neck area; with no lifting of more than ten
> pounds occasionally less than ten pounds frequently and
> the claimant requires a sit/stand option.

(Dkt. 6-2, Pg ID 36).  At step four, the ALJ concluded that plaintiff could not

perform his past relevant work requiring light to heavy exertion and skilled

abilities.  (Dkt. 6-2, Pg ID 38).  At step five, the ALJ denied plaintiff benefits

because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 6-2, Pg ID 38-39).

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ's decision is not supported by substantial evidence because the ALJ erred in finding that plaintiff had the residual functional capacity to perform sustained sedentary work, failed to properly consider the treating source opinion and did not correctly apply the Sixth Circuit pain standard. (Dkt. 10, Pg ID 668).

Plaintiff argues that there is no medical evidence whatsoever which supports the ALJ's residual functional capacity assessment.  (Dkt. 10, Pg ID 678). Plaintiff notes that, as stated in the Commissioner's own regulations, RFC is a "medical assessment."  *See* 20 C.F.R. § 404.1513(c), (d)(3) (2002).  Indeed, Social Security Ruling 83-10 defines RFC as follows:

> Residual Functional Capacity. *A medical assessment* of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).

SSR 83-10, *found at* 1983 WL 31251 (S.S.A. 1983) (Emphasis supplied). According to plaintiff, because RFC is a medical assessment, an ALJ is precluded from making this assessment without some expert medical testimony or other medical evidence to support his decision.  (*Id.*)  In this case, no such examining

4

medical source provides such support.  (Dkt. 10, Pg ID 679).

On February 24, 2012, Dr. Pasia, plaintiff's treating orthopaedic surgeon, provided his opinions as to plaintiff's functionality in an RFC.  (Dkt. 6-7, Pg ID 497-501).  This report, from the treating orthopedic surgeon, provides his medical opinion, which was that plaintiff could not perform sustained sedentary work. (*Id.*).  The Administration hired a record reviewing doctor, Dr. Newhouse, who made his opinions in May 2012, prior to having all of the medical records and opinions in hand, plaintiff argues.  According to plaintiff, a close review of Dr. Newhouse's opinion demonstrates that he relied on the prior decision from 2010.  (Dkt. 10, Pg ID 680).  That decision was generated after a hearing where claimant was unrepresented and no RFC evidence was obtained from plaintiff's treating physicians.  Plaintiff emphasizes the material differences in the evidence presented in this case as well as new and material evidence by way of an October 5, 2011, MRI which objectively demonstrated a new "3mm broadbased herniated disc with effacement of the ventral subarachnoid CSF space."  (Dkt. 6-7, Pg ID 301).  Plaintiff thus argues that the only evidence to suggest that he can function at the sedentary level is from the non-examining record reviewer, who in essence deferred to the prior decision.

Plaintiff contends that, in the absence of any credible medical opinions that he can perform sedentary work, the ALJ has improperly substituted her opinion for

that of the medical experts in making such a finding. (Dkt. 10, Pg ID 681). Plaintiff argues that the ALJ may not arbitrarily reject uncontroverted medical testimony. *See Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), *citing Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979). An ALJ cannot "deny disability benefits without some medical opinion that in fact the claimant is capable of gainful employment." *Goodley*, 608 F.2d at 236. Plaintiff argues further that, given the lack of any contradictory examining physician opinions, or opinions from physicians that overcome that of the treating medical specialist, the Commissioner cannot deny the claim. *Id.* (Dkt. 10, Pg ID 682). Plaintiff claims this is exactly what the ALJ did – rather than obtaining additional medical evidence after receiving all the medical records, as well as the treating physician's RFC, the ALJ made medical judgments based on her own review of the medical records and improperly assessed the RFC for plaintiff. Plaintiff concludes that the ALJ then denied plaintiff's claim for benefits based on an RFC finding that lacks support in the record.

Plaintiff next contends that the ALJ erred in weighing the opinion of plaintiff's treating orthopaedic surgeon, Dr. Pasia. (Dkt. 10, Pg ID 682-687). Plaintiff received treatment from Dr. Pasia since 2007. (Dkt. 6-7, Pg ID 300-422, 460-526). Plaintiff maintains that Dr. Pasia provided medical records and an extensive residual functional capacity report, which outlines plaintiff's diagnosis,

6

signs and symptoms, limitations and functionality.  (Dkt. 6-7, Pg ID 497-501).

Plaintiff argues that the ALJ's decision did not give controlling weight to the

medical opinions of plaintiff's treating specialist.  (Dkt. 10, Pg ID 683).  The ALJ

dismissed this treating physician opinions by stating:

> As for the opinion evidence, the treating physician, Dr.
> Pasia, has said several times that claimant is permanently
> unable to work (citations omitted). This is a conclusion
> reserved for the Commissioner. Dr. Pasia's specific
> limitations are only partly supported by findings in his
> clinical records.

(Dkt. 6-2, Pg ID 38).

According to plaintiff, the "treating physician rule", mandates that the ALJ

give a treating source's opinion controlling weight if it "is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in your case record."  20 C.F.R.

§ 404.1527(d)(2). If the ALJ declines to give a treating source's opinion

controlling weight, he must then balance the following factors to determine

what weight to give it:

> the length of the treatment relationship and the frequency
> of examination, the nature and extent of the treatment
> relationship, supportability of the opinion, consistency of
> the opinion with the record as a whole, and
> specialization of the treating source.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R.

§ 404.1527(d)(2)). (Dkt. 10, Pg ID 684). More importantly, the Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Soc. Sec. Rul*. No. 96-2p.

Plaintiff contends, that, as a hearing officer, the ALJ may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional. *Venette v. Apfel*, 14 F. Supp. 2d 1307, 1313 (S.D. Fla. 1998). Social Security Ruling 96-8p provides that the adjudicator must explain how any material inconsistences or ambiguities in the evidence in the case record were considered and resolved. (Dkt. 10, Pg ID 685). The RFC assessment must "always consider and address medical source opinions." *Id.* "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*.

Based on the foregoing, plaintiff contends that the ALJ improperly rejected Dr. Pasia's opinions. (Dkt. 10, Pg ID 685). The ALJ noted that Dr. Pasia was a treating physician, however, she failed to even note that Dr. Pasia had authored an

8

RFC providing his opinion regarding plaintiff's functionality. According to plaintiff, Dr. Pasia outlined limitations in his RFC that would preclude all competitive employment. (Dkt. 6-7, Pg ID 497-501). Plaintiff argues that there is no real explanation as to why Dr. Pasia's opinions were not given controlling weight. Plaintiff contends the ALJ dismissed Dr. Pasia's conclusions that plaintiff is permanently disabled, but never addressed the more detailed opinions set forth in the RFC form.

Additionally, plaintiff argues that the ALJ failed to perform the proper analysis required under the regulations when a treating physician's opinion is going to be given less than controlling weight. (Dkt. 10, Pg ID 686). It is unclear what weight was given to Dr. Pasia's opinions. Plaintiff asserts that such opinions and assessments should be given controlling weight, however, the ALJ never performed the requisite analysis. Nor did she provide the rationale for anything less than controlling weight. There is no "good cause" analysis, no explanation, or discussion as to how Dr. Pasia's opinions are inconsistent with the substantial evidence in the record. (Dkt. 10, Pg ID 687). Plaintiff asserts that this failure to provide said analysis is reversible error. Plaintiff further argues that there is no analysis of the various factors provided in the regulations such a length of treatment, frequency, *etc*. According to plaintiff, the decision is devoid of any such analysis and as such there is no way to review the basis for rejecting the

treating physician rule.  Thus, plaintiff contends reversal and remand is required.

Plaintiff also argues that the ALJ failed to properly apply the Sixth Circuit pain standard.  (Dkt. 10, Pg ID 687).  The ALJ determined that plaintiff's allegations are not entirely credible.  (Dkt. 6-2, Pg ID 38).  The ALJ states: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible for reasons explained in this decision."  (Dkt. 10, Pg ID 688).  Plaintiff contends, however, that there was no reasoned explanation or discussion as to why his statements were not credible.  The only discussion was one sentence: "He has a number of activities such as out of town trips that suggest greater ability to function than he acknowledges."  (Dkt. 6-2, Pg ID 38).  Plaintiff argues that in so finding, the ALJ failed to properly apply the Sixth Circuit pain standard and has mischaracterized the evidence of record in several key respects.

According to plaintiff, it is well settled that pain alone, if the result of a medical impairment, may be severe enough to constitute disability.  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  The Sixth Circuit has specified the following two-prong test for evaluating a claimant's assertions of disabling pain: "First, we examine whether there is objective medical evidence of an underlying

10

medical condition.  If there is, we then examine: (1) objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986).  In *Felisky*, the Sixth Circuit also explained that the Commissioner's regulations contain a checklist of factors which are considered in evaluating symptoms, which include: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *Id.* at 1039- 40 (citing 20 C.F.R. §404.1529(c)(2)).  In addition to these factors, the regulations also provide that it will review the opinion and statements of the claimant's doctors.  *Id.* at 1040; (Dkt. 10, Pg ID 689).

Plaintiff argues that the ALJ summarily referenced 20 C.F.R. § 404.1529 in her decision (Dkt. 6-2, Pg ID 36), but failed to consider the regulatory factors and how they relate to the evidence in this case, as required. (Dkt. 10, Pg ID 690). Furthermore, plaintiff argues that the ALJ's credibility findings are simply not based on a full and complete reading of this record. The only support for her finding was that plaintiff took out of town trips. (Dkt. 6-2, Pg ID 38; Dkt. 10, Pg ID 691). There is nothing else provided as a basis for discounting plaintiff's credibility. The ALJ simply failed to appreciate the trips were family-necessary trips for which plaintiff indicated that due to his conditions and pain, he was not able to drive, relying instead on his wife to drive. Moreover, he testified that he was wiped out for a day following the drive. This is not incompatible with the evidence that supports plaintiff's inability to sustain full time work. In fact, it supports such a finding. The ALJ failed to note plaintiff's qualifying statements regarding his ability to travel and how this was limited to only a couple of times over the course of several years. According to plaintiff, his limited daily activities are plainly not inconsistent with his assertion that he is unable to work.

Plaintiff concludes with the assertion that the Sixth Circuit has held that [a]n applicant need not be bedridden or completely helpless in order to fall within the definition of disability. *Walston v. Gardner*, 381 F.2d 580, 585 (6th Cir. 1987). (Dkt. 10, Pg ID 692).

C.    The Commissioner's Motion for Summary Judgment

The Commissioner notes that, on July 13, 2010, the Agency decided

plaintiff was not disabled between August 26, 2006 and the date of that decision

("Prior Decision").  (Dkt. 6-3, Pg ID 146-159).  In the Prior Decision, a different

adjudicator assessed plaintiff's RFC for the period between August 26, 2006 and

July 13, 2010 ("Prior RFC Finding"), then determined that plaintiff was not

disabled during that period.  (*Id.*).  The Commissioner argues that the ALJ in this

case correctly adopted the Prior RFC Finding, which she was required to do absent

new and material evidence or a change in the governing law.  (Dkt. 6-2, Pg ID 36),

referring to Social Security Acquiescence Ruling ("AR") 98-4(6), 1998 WL

274052.

> [T]hrough the [D]ate [L]ast [I]nsured, [Plaintiff] had the
> [RFC] to perform sedentary work as defined in 20 CFR
> §404.1567(a)[6] except he was limited to simple
> repetitive tasks because of occasional limitations in the
> ability to maintain sustained concentration; no more than
> occasional pushing/pulling with the upper extremities;
> no overhead reaching; occasional gross manipulation
> bilaterally; no work at hazardous heights or around
> dangerous machinery; no work with vibrating tools or
> vibrating areas; no more than occasional climbing of
> stairs, balancing, stooping, crouching, kneeling, [or]
> crawling; no climbing of ladders ropes or scaffolds; no
> more than occasional full rotation, flexion, and extension
> of the head/neck area; with no lifting of more than ten
> pounds occasionally and less than ten pounds

frequently[;] and [Plaintiff] requires a sit/stand option.[2]

(Dkt. 6-2, Pg ID 36).

The Commissioner argues that substantial evidence supports the ALJ's finding that there was no new and material evidence subsequent to the Prior Decision that established any limitations beyond those set forth in the highly restrictive Prior RFC Finding.  First, the Commissioner notes that the State agency orthopedist, Dr. VanderHaagen,[3] reviewed the evidence of record and opined that the Prior RFC Finding accurately reflected Plaintiff's physical limitations and that "[n]ew and material evidence has not been established."  (Dkt. 6-3, Pg ID 139) (Dkt. 14, Pg ID 715).  As the regulations explain, State Agency physicians such as Dr. VanderHaagen are "highly qualified . . . experts" in the evaluation of disability under the Act.  20 C.F.R. § 404.1527(e)(2)(I); (Dkt. 14, Pg ID 715).

Second, the Commissioner urges that the ALJ supportably found that Plaintiff had only mild restrictions in his activities of daily living.  (Dkt. 6-2, Pg ID 35).  More fully, and as the ALJ correctly indicates (Dkt. 14, Pg ID 35, 37, 38), Plaintiff and/or his wife admitted that Plaintiff could attend to his personal care

---

[2] As the ALJ acknowledges, "there are differences between" the RFC finding here and the Prior RFC Finding but notes that those differences "are not material."  (Dkt. 6-2, Pg ID 36) (Dkt. 14, Pg ID 714).

[3] The Commissioner notes that Plaintiff misidentifies Dr. VanderHaagen as "Dr. Newhouse" (Dkt. 10, Pg ID 679-680).  Dr. VanderHaagen is the State agency orthopedist who provided an opinion about Plaintiff's physical limitations.  (Dkt. 6-3, Pg ID 137-139).

14

(Dkt. 6-2, Pg ID 87; Dkt. 6-6, Pg ID 255, 266); care for his son, who was twelve years old at the time of the hearing in March 2013 (Dkt. 6-6, Pg ID 255); do home exercises, including with a rubber band (Dkt. 6-2, Pg ID 87); prepare meals about four times a week, including by grilling hamburgers and chicken (Dkt. 6-6, Pg ID 256, 267); care for his cat and dog (Dkt. 6-6, Pg ID 255, 266); perform household chores such as dusting once a week (Dkt. 6-6, Pg ID 256, 267), vacuuming the main rug once a week (Dkt. 6-6, Pg ID 256, 267), and doing laundry and taking vacations and other out-of-town trips to visit family, including by traveling to Tennessee (Dkt. 6-2, Pg ID 76, 81-82; Dkt. 6-7, Pg ID 428, 436) and Virginia (Dkt. 6-2, Pg ID 76-79, Dkt. 6-7, Pg ID 435) (Dkt. 14, Pg ID 716). Plaintiff and/or his wife also admitted that he could drive (Dkt. 6-6, Pg ID 257, 268), use a riding lawn mower (Dkt. 6-6, Pg ID 256), run errands (Dkt. 6-6. Pg ID 255, 257), shop in stores once a week (Dkt. 6-6, Pg ID 257, 268), and manage money (Dkt. 6-6, Pg ID 257, 268). According to the Commissioner, the regulations squarely authorize reliance on such evidence. The Commissioner notes numerous decisions affirming denials of benefits, in which the Sixth Circuit has emphasized claimants' abilities to perform the exact same activities that Plaintiff here admittedly performed.

Third, the Commissioner argues that the ALJ supportably indicated (Dkt. 6-2, Pg ID 36) that plaintiff had a history of conservative treatment, such as a TENS unit (Dkt. 6-2, Pg ID 68; Dkt. 6-7, Pg ID 313, 317, 327), massage (Dkt. 6-7, Pg ID

15

313) and home exercises with a rubber band (Dkt. 6-2, Pg ID 87-88). The

regulations squarely authorize reliance on such evidence.  (Dkt. 14, Pg ID 717).

Fourth, the Commissioner argues that the ALJ supportably indicated that

Plaintiff's treatment was effective.  (Dkt. 6-2, Pg ID 37, referring to Dkt. 6-2, Pg

ID 68 (Plaintiff's admission that he uses TENS unit "a lot" and that "it helps");

Dkt. 6-7, Pg ID 313 (Plaintiff's admission that he "can do well with massage and a

home TENS unit"); Dkt. 6-7, Pg ID 327 (Plaintiff's admission that TENS unit

"does help"); see also Dkt. 6-7, Pg ID 317 (Plaintiff's admission in September

2011 that he "had improvement in the past with use of a home TENS unit").

According to the Commissioner, the regulations squarely authorize reliance on

such evidence.  20 C.F.R. § 404.1529(c)(3)(iv) (proper to consider effectiveness of

treatment); *see also*, *e.g.*, *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d

922, 927 (6th Cir. 1987).

Fifth, the Commissioner contends that the ALJ supportably found that the

RFC finding was supported by the objective medical findings.  (Dkt. 6-2, Pg ID

38).  Again, the Commissioner argues that the regulations squarely authorize

reliance on this fact.  20 C.F.R. § 404.1529(c)(2) (Agency "will consider"

objective medical evidence).  The Commissioner emphasizes that the RFC finding

(Dkt. 6-2, Pg ID 38) was consistent with the findings in Dr. Pasia's clinical

records on and after the alleged onset date, which included that Plaintiff's fusion

16

was solid, stable, and intact (Dkt. 6-7, Pg ID 314, 318, 323, 325, 327, 505); he was in no acute distress (Dkt. 6-7, Pg ID 314, 316, 318, 320, 323, 325, 327, 505, 510); he was nontender to palpation at the midline (Dkt. 6-7, Pg ID 314, 316, 318, 320, 323, 325, 505, 510); and he had a negative Spurling sign bilaterally. (Dkt. 6-7, Pg ID 314, 316, 318, 320, 323, 325, 327, 505, 510).

The Commissioner notes that plaintiff does not acknowledge that the ALJ was required to adopt the Prior RFC Finding absent new and material evidence or a change in the governing law. *See* AR 98-4(6). Although plaintiff makes the conclusory assertion that the 2011 MRI is "new and material evidence" (Dkt. 10, Pg ID 680), the Commissioner asserts that he does not make any meaningful attempt to sustain his burden of establishing that proposition. Significantly, according to the Commissioner, Dr. Paley reported that the 2011 MRI indicated that plaintiff's cervical spine remained largely "unchanged" (Dkt. 6-7, Pg ID 301), and plaintiff does not even assert – let alone attempt to sustain his burden of establishing – that the one change that Dr. Paley did note (a herniation away from Plaintiff's fusion site) required the ALJ to depart from the highly restrictive Prior RFC Finding. The Commissioner urges that there is much more than substantial evidence to support the ALJ's finding that the 2011 MRI was not "material" within the meaning of AR 98-4(6). (Dkt. 14, Pg ID 719). The Commissioner notes that Dr. Pasia examined plaintiff multiple times after the 2011 MRI. Each

time, he reported in his contemporaneous treatment notes that Plaintiff was in no acute distress, he was nontender to palpation at the midline, and he had a negative Spurling sign bilaterally. (Dkt. 6-7, Pg ID 314, 505, 510). Similarly, Dr. Pasia reported that the two separate 2012 X-Rays – each of which he obtained after the 2011 MRI – indicated that Plaintiff's fusion was "solid" and "intact," and that his alignment was proper. (Dkt. 6-7, Pg ID 314, 505). More generally, Dr. Pasia did not report that the 2012 X-Rays suggested any new limitations at all, let alone any limitations that went beyond those set forth in the highly restrictive Prior RFC Finding. (*Id.*).

In addition to the issues addressed above, the Commissioner refutes plaintiff's arguments that the RFC finding is defective because the ALJ failed to properly consider (1) Dr. Pasia's opinion and (2) the credibility of Plaintiff's allegations about his pain. (Dkt. 14, Pg ID 722). The Commissioner notes that the medical opinion of a treating source such as Dr. Pasia is entitled to "controlling weight" only if both of the following two elements are satisfied: (1) it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" and (2) it is "'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 406 (6th Cir 2009) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). (Dkt. 14, Pg ID 723). In the event that both of these elements are not satisfied, "'[i]t is an error to

18

give an opinion controlling weight.'" *Id*. (quoting SSR 96-2p, 1996 WL 374188, at *2).

As a threshold matter, the Commissioner observes that the RFC finding incorporates several of Dr. Pasia's opined limitations.  The Commissioner further observes that the critical inquiry about Dr. Pasia's opinion is whether it constitutes new and material evidence that required the ALJ to depart from the highly restrictive Prior RFC Finding.  *See* AR 98-4(6).  Substantial evidence supports the ALJ's finding that it was not.  With respect to the Disability Certificate, the ALJ correctly found that Dr. Pasia's statement that Plaintiff should remain "off work permanently" is "a conclusion reserved for the Commissioner."  (Dkt, 6-2, Pg ID 38, referring to Dkt. 6-7, Pg ID 534).  Pursuant to SSR 96-5p, 1996 WL 374183, at *3, the ALJ was precluded from according any special significance to that conclusion – and, thus, precluded from finding that it was "new and material evidence" within the meaning of AR 98-4(6) – because doing so would have been "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  (Dkt. 14, Pg ID 724).  The Commissioner argues that the vocational expert disagreed with Dr. Pasia's conclusion and, in fact, identified multiple "viable job leads" for work that Plaintiff could perform despite his limitations both a few days after the alleged onset date (Dkt. 6-7, Pg ID 597, 598) and a few weeks before the date last insured.  (Dkt. 6-7, Pg ID 647,

19

649).

With respect to the 2012 Checklist, the Commissioner contends that the ALJ found that the limitations beyond those set forth in the highly restrictive Prior RFC Finding are not supported by the findings in the contemporaneous treatment notes that Dr. Pasia generated when he examined Plaintiff between the alleged onset date and the date last insured.  (Dkt. 6-2, Pg ID 38).  The Sixth Circuit has repeatedly held that an adjudicator may properly rely on such a finding to discount a treating physician's opinion.  *See e.g.*, *Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 177 (6th Cir. 2009); *Essary v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 662, 667 (6th Cir. 2004).  More generally, the Commissioner asserts that it is well-settled that forms such as the 2012 Checklist are not entitled to significant weight. Indeed, the Tenth Circuit states that forms that – like the 2012 Checklist – are "unaccompanied by thorough written reports or persuasive testimony, *are not substantial evidence*."  *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (emphasis added) (citing Third Circuit authority).  (Dkt. 14, Pg ID 725).  Plaintiff repeatedly asserts that the ALJ ignored the 2012 Checklist.  According to the Commissioner, these assertions do not accurately characterize the decision.  The Commissioner notes that the record contains three essentially identical versions of the 2012 Checklist.  (Dkt. 6-7, Pg ID 497-501, 527-28, 535-40).  The ALJ explicitly cites all three of these documents.  (Dkt, 6-2, Pg ID 38).  The

20

Commissioner argues that the ALJ explicitly and supportably discounted the opinion contained in those documents on the ground that it was not fully supported by Dr. Pasia's treatment notes.  (*Id.*).

Plaintiff asserts that the ALJ failed to discuss the factors set forth in the regulation governing the consideration of medical opinions.  (Dkt. 10, Pg ID 687).  (Dkt. 14, Pg ID 726).  The Commissioner maintains that, although that regulation "instruct[s] an ALJ to consider these factors," it does not require her to discuss them in the Decision. *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).  The Commissioner urges that the ALJ's consideration of Dr. Pasia's opinion touched on all the factors and was therefore sufficient.

The Commissioner also refutes plaintiff's position that the ALJ failed to properly consider plaintiff's allegations about his pain.  (Dkt. 14, Pg ID 727).  As the Sixth Circuit has explained, "[c]laimants challenging the ALJ's credibility findings face an uphill battle. . . . Upon review, we are to accord the ALJ's determinations of credibility great weight and deference . . . ." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005).  Indeed, the Sixth Circuit has declared that "an administrative law judge's credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 508, 511 (6th Cir. 2013).  This highly deferential standard of review reflects, *inter alia*, the fact that the ALJ had the opportunity to assess Plaintiff's credibility by observing his

21

demeanor face-to-face as he testified at the hearing. *Id.* As the Sixth Circuit has declared, such observations are "'invaluable.'" *Berry v. Comm'r of Soc. Sec.*, 2008 WL 3271255, at **2 (6th Cir. Aug. 8, 2008). (Dkt. 14, Pg ID 728). The ALJ here found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." (Dkt. 6-2, Pg ID 38). The Commissioner asserts that the ALJ found that Plaintiff was not credible to the extent he alleged that his pain (and other symptoms) give rise to limitations beyond those set forth in the highly restrictive RFC finding. (Dkt. 6-2, Pg ID 36). The Commissioner concludes that substantial evidence supports this finding. As a threshold matter, the Commissioner observes that the critical inquiry about the ALJ's credibility finding is whether any of Plaintiff's allegations about his pain (and other symptoms) constitutes new and material evidence that required the ALJ to depart from the Prior RFC Finding. *See* AR 98-4(6). The Commissioner urges that it was not. As discussed above, the ALJ supportably found that Plaintiff had only mild restrictions in his activities of daily living (Dkt. 6-2, Pg ID 35), that Plaintiff had a history of conservative treatment for his allegedly disabling symptoms (Dkt. 6-2, Pg ID 37), that Plaintiff's treatment was effective (*id.*), and that objective medical findings supported the RFC finding (and, therefore, supported the ALJ's decision to discount the credibility of Plaintiff's contrary allegations). (Dkt. 6-2, Pg ID 38).

Plaintiff next argues that the ALJ "failed to consider the regulatory factors" governing the consideration of claimants' credibility.  (Dkt. 14, Pg ID 730). According to the Commissioner, however, "[i]t is well established that the ALJ is not required to discuss every [credibility] factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, 2014 WL 1577525, at *3 (W.D. Mich. April 1, 2014) (collecting Sixth Circuit authority), adopted by 2014 WL 1577525 (April 21, 2014).  It therefore suffices to observe that the ALJ explicitly discussed multiple regulatory factors.  For that reason, plaintiff's reliance on *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994), is misplaced.  *See e.g.*, *Lutze v. Comm'r of Soc. Sec.*, 2013 WL 2338427, at *2 (E.D. Mich. May 29, 2013) ("Unlike the ALJ in Felisky, the ALJ in the instant case provided sufficient reasoning for rejecting Plaintiff's statements of severe pain.").  For these reasons, the Commissioner submits that Plaintiff cannot prevail in the "uphill battle" to overcome the "'great weight and deference'" that this Court must give to the ALJ's "virtually 'unchallengeable'" credibility finding.  (Dkt. 14, Pg ID 732).

Plaintiff argues that, if this Court decides to reverse the decision, then the proper remedy would be to order the Agency to pay benefits (as opposed to remanding for further administrative proceedings).  In conclusion, the Commissioner briefly explains why the remedy that plaintiff seeks is improper. The United States Supreme Court has cautioned that, absent exceptional

circumstances, a federal court "should remand a case to an agency for decision of a matter that" – like the parties' dispute in the above-captioned matter – Congress has "place[d] primarily in agency hands." *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002); *see also e.g.*, *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (when an agency has erred, "'the proper course, except in rare circumstances, is to remand to the agency'" for further proceedings). Similarly, the Sixth Circuit has indicated that an award of benefits is the proper remedy for an error by the Agency only if the "record compels a finding of disability," the "regulations direct a finding [that the claimant was] disabled," and "[t]he record is completely devoid of evidence" supporting the denial of benefits. *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). (Dkt. 14, Pg ID 733). For the reasons discussed above, the Commissioner agues that plaintiff cannot sustain his burden of establishing that he is entitled to the extraordinary remedy that he seeks.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial

24

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

25

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

27

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) Title II

benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status.  F. Bloch, Federal Disability Law and Practice §

1.1 (1984).  "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

    Administrative *res judicata* in the Sixth Circuit binds subsequent ALJs unless the plaintiff provides evidence documenting a worsening condition.  *Erb v. Comm'r of Soc.Sec.*, 2015 WL 730130, at *20 (E.D. Mich. Feb. 19, 2015); *see also, Drummond v. Comm'r of Soc.Sec.*, 126 F.3d 837 (6th Cir. 1997).  Evidence aimed at undermining the first decision by showing the original condition was worse than assessed is not sufficient.  *Erb*, 2015 WL 730130, at *20; *see also Hawley v. Comm'r of Soc.Sec.*, 2003 WL 1120159, at *2 (E.D. Mich. Feb. 3, 2003) (There is no exception to *res judicata* when the party that lost the original decision uncovers new evidence.).

    To overcome a presumption that the plaintiff remains able to work in a subsequent period, after a prior decision of non-disability, the plaintiff must proffer new and material evidence that his health has declined.  *Id.* at *21.  Moreover, the evidence must not only be new and material, but also must show deterioration. *Id*. (citing *Drogowski v. Comm'r of Soc.Sec.*, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011), *adopted by* 2011 WL 4502955, at *4 (E.D. Mich.

Sept. 28, 2011)). Decisions from throughout this Circuit make clear that the required change in circumstances is not a change in the state of the available evidence, but rather, a change in plaintiff's condition. *Erb*, 2015 WL 730130, at *21 (citing *Kennedy v. Astrue*, 247 Fed. Appx. 761, 768 (6th Cir. 2007); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993); *Priest v. Soc.Sec. Admin.*, 3 Fed. Appx. 275, 276 (6th Cir. 2001); *Blackburn v. Comm'r of Soc.Sec.*, 2012 WL 6764068, at *5 (E.D. Tenn. Nov. 14, 2012), *adopted by* 2013 WL 53980, at *1 (E.D.Tenn., Jan. 2, 2013)).

Although the plaintiff has the burden of demonstrating a deterioration in his condition(s) subsequent to the initial decision, *see Erb*, 2015 WL 730130, at *20-21, the ALJ must read and consider the initial decision and compare any newly submitted materials to that baseline to make this determination. *Id*. at 21; *Ballatore v. Comm'r of Soc.Sec.* 2013 WL 1090671, at *5 (E.D. Mich. March 15, 2013) (ALJs must determine whether plaintiff has demonstrated a deterioration in his condition sufficient to evade the strictures of *res judicata* and the binding effects of a prior decision).

In *Ballatore*, the court remanded the matter, in part, because the ALJ had not discussed the original RFC, or explained how the current status of the claimant's condition differed from the status at the time of the original determination. *Id*. at *4-5. That the ALJ there cited *Dennard v. Sec'y of HHS*,

31

907 F.2d 598 (6th Cir. 1990) (applying *res judicata* in Social Security cases) without explanation of how he was applying it, and without identifying or discussing the status of plaintiff's condition, was not sufficient; the court remanded with instructions to the ALJ to expressly determine whether the plaintiff's condition changed since the original disability determination, and, in so doing, to explicitly reference and discuss the original decision. *Id.* at *5, 10.

Similarly, the ALJ in this case cites *Drummond*, and its *res judicata* standard, but does not indicate how or if she is applying it. (Dkt. 6-2, Pg ID 36). She does not identify, discuss, explain or analyze whether any of plaintiff's conditions have changed since the Prior Decision. Instead, the ALJ references the RFC from the Prior Decision without discussing it - other than to note that it is not materially different from the one she had devised. *Id.* Nevertheless, a new RFC for plaintiff that is at least somewhat different from that found in the Prior Decision would only be appropriate if plaintiff's condition changed after the Prior Decision. *See Erb*, 2015 WL 730130, at *21. The decision under review contains no discussion or analysis of any evidence of a deterioration of plaintiff's condition(s). Accordingly, the undersigned believes that remand is required so that the ALJ may clarify if the record shows a deterioration subsequent to the Prior Decision justifying the development of a new RFC; otherwise, the Prior Decision remains binding. *See Ballatore*, 2013 WL 1090671, at *5-10.

Because this matter is being recommended for remand for further

proceedings, and in the interests of judicial economy, the undersigned will not

consider plaintiff's assignments of error.[4]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED IN PART**, that

defendant's motion for summary judgment be **DENIED**, that the findings of the

Commissioner be **REVERSED**, and that this matter be **REMANDED** for further

proceedings. Upon remand, the ALJ shall specifically assess whether the record

demonstrates a deterioration in plaintiff's condition(s) subsequent to July 13,

2010.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

---

[4] Both parties' motions are silent on the determinative issue at hand.  Plaintiff, instead advances arguments regarding treating source opinions and credibility without regard to the existence of the Prior Decision.  The Commissioner argues that substantial evidence supports a non-existent ALJ finding that there was no new material evidence subsequent to the Prior Decision.

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 4, 2016                          s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States Magistrate Judge

34

## **CERTIFICATE OF SERVICE**

I certify that on March 4, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov